**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        **v.**                                **04-CR-222S - 03**

**KENNETH ARTHUR MEGO,**

        **Defendant.**

_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

## PRELIMINARY STATEMENT

The defendant, Kenneth Arthur Mego ("the defendant"), is charged along with thirteen co-defendants in a multicount indictment with having violated Title 21 U.S.C. §§ 841(c)(2), 846 (Count 1), §§ 841(b)(1)(A), 846 (Count 2), § 841(c)(2) and Title 18 U.S.C. § 2 (Counts 4 and 5), and a forfeiture count (Count 8) pursuant to Title 21 U.S.C. §§ 853(a)(1), 853(a)(2), 853(a)((3) and 853(p).  (Docket #8).  The defendant has filed a motion wherein he seeks "suppression under Rule 12 of the Federal Rules of Criminal Procedure, of all evidence and/or information acquired as a result of the electronic surveillance utilized during this investigation."  (Docket #40).  In support of this motion, the defendant asserts there was a lack of "necessity;" a "sealing violation"

Case 1:04-cr-00222-WMS   Document 74   Filed 09/08/05   Page 2 of 14

and "taint." (Docket #40, ¶ 26).

## **FACTS**

On May 14, 2004, the Hon. John T. Elfvin issued an Order authorizing the interception of wire communications pursuant to Title 18 U.S.C. § 2518 to and from the "telephone facility bearing the number 716/947-0163, a residential telephone subscribed to by Sandra Jacobi," and telephone number "716/863-8669," a "cellular telephone subscribed to by Jacobi's Restaurant, c/o John/Sandy Jacobi, 1404 Abbott Road, Buffalo, New York" based on the affidavit of Special Agent ("S.A.") Mark Gentile of the DEA sworn to May 14, 2004. Thereafter, orders extending the authorization for the interception of wire communications to and from the aforesaid telephones were issued on June 11, 2004 by the Hon. William M. Skretny, and on July 9, 2004 by the Hon. John T. Elfvin. In all of these Orders, the defendant is referenced as an "interceptee/violator" of 21 U.S.C. §§ 841(c)(1), 843(a)(7), 843(b) and 846.

Conversations in which the defendant was a participant were intercepted pursuant to the aforesaid Orders and therefore the defendant is an "aggrieved" person under 18 U.S.C. § 2510(ll).
-2-

**DISCUSSION AND ANALYSIS**

    **1.    The Probable Cause Issue:**

The defendant argues that "the application and each extension fails to provide the requisite probable cause showing with respect to the telephones listed to the Jacobi's (sic) as they relate to [the defendant]" and that the "factual information contained in the applications and extensions contains simply conclusionary allegations of the applicant." (Docket #40, ¶¶ 28 and 29). As a result, he concludes that "all evidence and/or information acquired" as it relates to him should be suppressed. (Docket #40, ¶ 46).

Basically, the defendant is requesting that a review of Judge Elfvin's decision in issuing the Intercept Order of May 14, 2004 be made so as to conclude that such order was improperly issued. The role of this Court in conducting such a review is no different than that conducted by a court of appeals and therefore, the admonition of the Second Circuit Court of Appeals is appropriately applied in this process wherein the court stated**:**

> "In reviewing a ruling on a motion to suppress wiretap evidence, we accord deference to the district court." *Miller*, 116 F.3d at 663 (quoting *Torres*, 901 F.2d at 231). Our role in reviewing the issuance of a wiretap order is not to make a *de novo* determination of the sufficiency of the application, "but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *Id.*

*United States v. Diaz*, 176 F.3d 52, 109 (2d Cir.), *cert. denied* by *Rivera v. United States*, 528 U.S. 875 (1999).

       S.A. Gentile submitted an affidavit sworn to May 14, 2004 consisting of sixty-two typewritten pages wherein he described in substantial detail an "overview of [a] drug trafficking organization" in which the defendant was a participant during the period "between June 2003 and May 2004." (May 14, 2004 affidavit of S.A. Gentile, ¶ 72) based on a joint investigation conducted by United States and Canadian law enforcement agencies. S.A. Gentile iterates specific details of drug activity by the defendant in conjunction with other members of the drug trafficking organization. (*See* ¶¶ 60, 65-71, 94(g), (j) May 14, 2004 affidavit of S.A. Gentile). An agent's training and experience can be considered in determining whether probable cause exists. *U.S. v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985), *cert. denied*, 486 U.S. 1043 (1987).

       As the Second Circuit Court of Appeals has stated, "the standard for probable cause applicable to [18 U.S.C.] § 2518 is 'the same as the standard for a regular search warrant. Under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983), probable cause for a search warrant is established if the totality-of-the-circumstances' indicate a probability of criminal activity. *See id.* at 230-32, 103 S.Ct. 2317." *United States v. Diaz,* 176 F.3d at 110. Considering the totality of the circumstances set forth in the Affidavit of S.A. Gentile in support of the application for the May 14, 2004 intercept order, the facts set forth in the application were adequate to

support a finding of probable cause for the issuance of the May 14, 2004 intercept order and such finding is in further deference to the findings made by Judges Elfvin and Skretny in authorizing the Order of May 14, 2004 and the subsequent Orders at issue. *United States v. Diaz,* 176 F.2d at 109.

Therefore, it is RECOMMENDED that defendant's motion to suppress the "electronic eavesdropping evidence" on the basis that there was "no probable" cause for the issuance of the eavesdrop orders at issue be DENIED.

**2.    The "Necessity" Issue:**

The defendant argues that "the applications and extensions for the eavesdrop warrants of May 14, 2004, June 11, 2004 and July 9, 2004 failed to establish the prerequisite necessity" since "the applications clearly demonstrate use of physical surveillance as a productive investigative tool" and failed to address the use of "confidential informants who might have assisted this investigation" or "whether there was any attempt by the agent to deal directly with any of the targeted individuals in the application." (Docket #40, ¶¶ 36, 37, 40, 41).

In his affidavit of May 14, 2004, S.A. Gentile acknowledges that "substantial information [had] been gathered against [the defendant] from both the Buffalo Resident Office and the DEA Sacramento Division Office investigations" but asserted that the investigations had "not revealed the full scope of [the defendant's]

activities" and that "interceptions of conversations over the target telephones [would] result in the seizure and admissibility of highly relevant and incriminating conversations between [the defendant and his] sources of supply, other known interceptees, and as yet unknown co-conspirators."

>Title 18 U.S.C. § 2518(1)(c) requires that:
>
>a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

The application for the Intercept Order of May 14, 2004 was based upon a sixty-two (62) typewritten page affidavit of S.A. Gentile of the DEA wherein he describes in great detail the history of the investigation to date and information obtained based on use of confidential informants, physical surveillance, pen registers and review of toll records. S.A. Gentile states that these normal avenues of investigation have been evaluated for use or have been attempted with only limited results. He further states that the convening of a federal grand jury, interview of subjects and the execution of search warrants would not be likely to succeed and would undoubtedly alert the target subjects of the investigation. Once again, the training and experience of the agent can be considered in this context of "necessity." *United States v. Fama, supra*.

Since the holding in *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert. denied* 498 U.S. 906 (1990), addresses the issue raised by the defendant on whether

18 U.S.C. § 2518(1)(c) was complied with, it is worthwhile to sacrifice brevity and set forth that Court's ruling in detail.

> Section 2518(1)(c) requires that an application for such an interception shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ." Similarly, section 2518(3)(c) requires the judge to whom an application for a wiretap is made to determine, as a condition of authorizing the tap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."
>
> The application for the wiretap in this case was based upon a thirty-six page affidavit by DEA agent Timothy J. Sullivan dated May 27, 1987. Flores contends that when the application for a wiretap was made, traditional law enforcement methods had already achieved "extraordinary success . . . in penetrating the deepest reaches of the Torres Organization," and that the "affidavit utterly failed to establish, even on a superficial level, that less intrusive techniques had not been successful and could not be successful." In advancing this position, Flores points out that our decision in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), precludes the authorization of wiretaps based upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful," *id*. at 104. Flores also argues that it does not suffice to show that a case belongs to some general class of cases which require wiretap investigation, citing *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975) (gambling case).
>
> We are unpersuaded, and conclude that the application in this case provided a sufficient basis for authorizing the Flores wiretap. Section 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). As we have

stated:

> "[T]he purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

*United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quoting *United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *see also United States v. Fury*, 554 F.2d 522, 530 (2d Cir), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

The role of an appeals court in reviewing the issuance of a wiretap order, furthermore, "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977).  And, as the *Scibelli* court went on to say:

> [I]n determining the sufficiency of the application a reviewing court must test it in a practical and common sense manner.  The legislative history makes clear that section 2518(1)(c) is not designed to force the Government to have exhausted all "other investigative procedures".
>
> "The judgment [of the district judge] would involve a consideration of all the facts and circumstances.  Normal investigative procedure would include, for example, standard visual or aural surveillance

>
> techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. What the provision envisions is that the showing be tested in a practical and commonsense fashion.
>
> S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, p. 2190.
> *Scibelli*, 549 F.2d at 226 (citations omitted).

*Id.* at 231-232) (brackets included); *See also Diaz, supra* 111.

Giving proper deference to Judge Elfvin's review and acceptance of the sixty-two (62) page affidavit of S.A. Gentile sworn to May 14, 2004 in support of the application for the Intercept Order and his decision to grant said application and issue the order in question, it is concluded that Judge Elfvin "properly found that conventional investigative techniques had been exhausted and that alternatives to wire interception would be unlikely to succeed or would be too dangerous." *Id. at* 111.

Therefore, it is RECOMMENDED that defendant's motion to suppress the electronic evidence on the basis of "non-necessity" be DENIED.

### 3. The "Sealing" Issue:

Counsel for the defendant represents that he "has been provided with one (1) order of the Hon. William M. Skretny, United States District Judge dated August 9,

2004" and characterizes it "as the only sealing order some three (3) months after the initial warrant." (Docket #40, ¶ 44).  The defendant argues that this was an improper delay since the statute requires "that tape recordings generated during the execution of an eavesdrop warrant must be 'immediately' made available to the issuing judge upon expiration of the interception for sealing.  Consequently, suppression should be ordered."  (Docket #40, ¶ 44).

In the "sealing application" dated August 9, 2004, counsel for the government states that electronic surveillance pursuant to the Orders of May 14, 2004, June 11, 2004 and July 9, 2004 "continued up through August 7, 2004," which this Court understands to mean that such surveillance terminated as of August 7, 2004. The application seeking an order from Judge Skretny to have the recordings and original line sheets sealed was submitted to Judge Skretny on August 9, 2004 and Judge Skretny issued such sealing order on that date.

> 18 U.S.C. § 2518(8)(a) provides as follows:
>
> Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions.

The term "immediately" has been given a liberal interpretation by the Court of Appeals for the Second Circuit for purposes of determining issues related to claims of untimely sealing of tapes as evidenced by the following:

> This Court has held that a sealing "within one or two days" will normally be deemed immediate within the meaning of § 2518(8)(a), *United States v. Maldonado-Rivera,* 922 F.2d 934, 949 (2d Cir. 1990) (quoting *United States v. Vasquez*, 605 F.2d 1269, 1278 (2d Cir. 1979); *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 444 U.S. 1019, 100 S.Ct. 2811, 115 L.Ed.2d 984, 501 U.S. 1233, 111 S.Ct. 2858, 115 L.Ed.2d 1025 (1991) and that longer delays require suppression "unless the government furnishes an explanation for the delay that is 'satisfactory' within the meaning of the statute." *Id*., *see supra* note 5.  Where the delay is between two and five days, we have indicated that the government should submit with the tapes an *in camera* explanation for the delay, *see United States v. Massino*, 784 F.2d 153, 158 (2d Cir. 1986), although an explanation submitted at the time of a defendant's motion to suppress will be considered.  *See United States v. Pitera*, 5 F.3d 624, 627 (2d Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994).
>
> We have recognized that weekends and holidays present legitimate obstacles to the sealing of tapes.  *See, e.g., United States v. Gallo*, 863 F.2d 185, 193 (2d Cir. 1988), *cert. denied*, 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989); *United States v. McGrath*, 622 F.2d 36, 42-43 (2d Cir. 1980).

*United States v. Wong*, 40 F.3d 1347, 1375 (2d Cir. 1994).

Since the recordings at issue were made available to Judge Skretny within two (2) days after the last electronic interception on August 7, 2004, there has been compliance with the sealing requirements set forth in 18 U.S.C. § 2518(8)(a) and therefore, it is RECOMMENDED that defendant's motion to suppress in this regard be DENIED.

**4.     Defendant's Request For A Taint Hearing:**

The defendant argues that since there were "electronic surveillance defects," *i.e.*, a lack of probable cause, a lack of necessity, and a sealing violation, "there should be a taint hearing to ascertain the full nature and extent of the illegal electronic surveillance." (Docket #40, ¶¶ 45, 46).

Although this Court believes that it has jurisdictional authority to make a dispositive decision on this request, I have refrained from doing so because this request is substantially integrated with the defendant's motion to suppress the wiretap evidence and instead, hereby make my recommendation to the district judge as to this request. Since this Court has found that deference must be given to Judge Elfvin's and Judge Skretny's determinations that the applications for the intercept orders of May 14, 2004, June 11, 2004 and July 9, 2004 were sufficient for the issuance of these orders, and that defendant's assertions that the intercept orders were invalid are without legal merit for the reasons previously set forth herein, it is RECOMMENDED that the defendant's request for a "taint hearing" be DENIED.

## **CONCLUSION**

Based on the foregoing, it is hereby RECOMMENDED that defendant's motion to suppress all "electronic eavesdropping evidence" be DENIED in its entirety; and it is hereby

**ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and

-13-

the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

                                               /s/ H. Kenneth Schorder, Jr.
                                               H. KENNETH SCHROEDER, JR.
                                               United States Magistrate Judge

**DATED:**    **Buffalo, New York**
                 **September 2, 2005**